IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KAREEM MILHOUSE,

    Plaintiff,

v.                                                      Civil Action No. 1:14cv56
                                                        (Judge Keeley)

TERRY O'BRIEN, Warden; FANNING,
Psychologist (Chief); GREGORY MIMS,
Clinical and Medical Director; JOHN DOE,
Associate Warden of Programs; JOHN
DOES 1-10, unidentified employees of
the United States, FBOP; UNITED STATES;
and CHRISTOPHER MEYER, Physician
Assistant – Certified,

    Defendants.

**REPORT AND RECOMMENDATION THAT
APPLICATION TO PROCEED IN FORMA PAUPERIS BE DENIED AND THAT
COMPLAINT BE DISMISSED WITHOUT PREJUDICE**

On March 31, 2014, the *pro se* plaintiff, an inmate now incarcerated at USP Lewisburg, in Lewisburg, Pennsylvania, initiated this case by filing a <u>Bivens</u>[1] civil rights action.[2] On April 14, 2014, the plaintiff filed a Motion to Proceed Pursuant to Imminent Danger, alleging that he has an "Axis 1 mental illness diagnosis of depression," had been on "thirteen different psychotropic medications" but received none while at USP Hazelton, and attaching a September 16, 2013 medical record recommending that he be evaluated by a psychiatrist.[3] In his original complaint, the plaintiff raises 8th Amendment violation conditions of confinement claims regarding being in the Special Housing Unit ("SHU"); claims of deliberate indifference to serious medical needs, regarding what he perceives is insufficient treatment for his "Axis 1

---

[1] <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

[2] The plaintiff was incarcerated at USP Hazelton when he filed the complaint.

[3] Dkt.# 13-1.

1

depression" and other unspecified conditions. Plaintiff alleges that he is in imminent danger from self-inflicted injury and death by suicide as a result of the defendants' deliberate indifference to his serious medical needs, claiming that he has twice attempted suicide in an effort to get off of "1-Range." He contends that he is depressed because of the death threats he has received from other inmates who want to kill him because he is a snitch.

As relief, he requests injunctive relief in the form of a "permanent injunction against the BOP's widespread practice of "punishment" in lieu of "treatment" for inmates with mental health issues . . . immediate and permanent removal from federal custody to protect . . . [him] from retaliation. Further, he requests one million dollars in "monetary and punitive damages for pain and suffering, mental anguish, and deprivation of rights."[4]

On May 1, 2014, without seeking leave of court, the plaintiff filed an amended complaint, naming only two of the original defendants, "Fanning" and Terry O'Brien," and adding a third, "W. Odom, Associate Warden, USP Hazelton." The amended complaint raises only one claim: that in 2008, while incarcerated at another facility, he was diagnosed with "Axis 1 depression. Drugs and psychotherapy involving weekly counseling and monitoring sessions were prescribed and dispenced [sic]. The psyche [sic] counseling was never curtailed until Plaintiff arrived at USP – Hazelton."[5] Plaintiff contends that upon arrival at Hazelton, he was "simply thrown in a cell and plied with several psychotropic drugs; but never received any therapeutic counseling or monitoring in conjunction with it."[6] He argues that a medical doctor at "this very facility" advised the defendants in writing that if his mental illness was left untreated, it could lead to death by suicide. Plaintiff avers that the defendants ignored this advice and he has twice

---

[4] Dkt.# 7 at 10.

[5] Dkt.# 11 at 7 – 8.

[6] Dkt.# 11 at 7.

attempted suicide. As relief, he seeks Fifteen Million Dollars in monetary and Fifteen Million Dollars punitive damages, for a total of Thirty Million Dollars for his pain and suffering.[7]

Because the plaintiff had not filed his original complaint on the proper form, paid the filing fee or provided a copy of his application to proceed *in forma pauperis* ("IFP") along with its supporting documents, the Clerk of Court issued a deficiency notice, advising him to file all of the above-named corrected documents within 21 days. On April 22, 2104, the plaintiff partially corrected his deficient pleadings; although he did not provide a copy of his Prisoner Trust Account Report ("PTAR"), he did provide a copy of its Ledger Sheets, a Consent to Collect, and a motion to proceed as a pauper.

Nonetheless, because the plaintiff is not entitled to proceed *in forma pauperis* under 28 U.S.C. § 1915(g), there is no need to wait for the plaintiff to finish correcting his deficient pleadings.

The PLRA has restricted when a complaint may be filed without prepayment of fees. Specifically, 28 U.S.C. §1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. §1915(g)

---

[7] On plaintiff's original complaint, he lists "07-222, 09-1365, 10-135 and I do not know the appeal nos. And 07-14242. These actions were dismissed for failure to state a claim, failure to exhust [sic] administrative remedies. I am considered an abusive filer. And I know it doesn't count that I did understand [sic] the legalities but I thought I had claims. I also had an Axis 1 mental illness at the time of these filings which in a court of law I am/was incompetent." Dkt.# 7 at 7. In his amended complaint, the plaintiff lists "07-2222, 07-1442, 09-1365, and 10-135" as case he has previously filed that were dismissed for failure to state a claim, as "malious [sic]" or frivolous. He states "I am labeled abusive filer but previously I did not understand the law. And thought that my claims were legitimate." Dkt.# 11-1.

3

The BOP's "inmate locator" indicates that the plaintiff's expected date of release is September 28, 2080. A PACER search reveals that since April 11, 2007, Milhouse has filed at least 25 cases,[8] sixteen of which were civil rights cases. As early as May 4, 2010, the 3rd Circuit Court of Appeals, in an Order denying IFP on one of Milhouse's many appeals, stated "[d]espite appellant's argument to the contrary, he has had at least three cases[9] dismissed as frivolous, malicious or for failure to state a claim within the meaning of §1915(g)."[10] Consequently, Milhouse is listed on the National *Pro Se* Three-Strikes Database as an abusive filer.[11]

As set forth above, the plaintiff has filed at least three civil actions which were dismissed on the grounds of being frivolous, malicious, or failing to state a claim upon which relief may be granted. Therefore, based on the strikes the plaintiff has accumulated, he may not file another complaint without prepayment of fees unless he is in "imminent danger of serious physical injury." Here, despite plaintiff's claim to the contrary, the undersigned finds that the plaintiff's claims have no merit and that he is not in any danger, imminent or otherwise. The medical records plaintiff attaches to his original complaint in support of his claim show that in 2011 and

---

[8] Nine of those were §2241 petitions, at least one of which was merely another civil rights case, filed under the guise of a §2241 petition, as plaintiff has also done in this court in another pending case, 3:14cv25. Typically, upon dismissal of his civil rights cases for frivolity or for failure to state a claim, the plaintiff would immediately appeal, claiming "imminent harm."

[9] See Brown v. Shelby County, 02cv02365 (W.D. Tenn. 2002); Brown v. Shelby County, 02cv02366 (W.D. Tenn. 2002); Brown v. Nurse Thomas, W.D. Tenn. Civ. No. 02cv02368; Milhouse v. Peoria, 1:10cv135 (M.D. Pa. 2010); Milhouse v. Jordan, 1:09cv1365 (M.D. Pa. 2009); and Brown et al. v. Blue, 09cv01946 (M.D. Pa. 2009).

[10] (3rd Cir. May 4, 2010)(09-4491).

[11] In another civil rights case, Milhouse v. Arbasak, 2:07cv1442 (E.D. Pa. 2007), petitioner alleged that the defendant BOP employees were retaliating against him for smuggling a razor in to a visit from his attorney and attempting to rape her. The memorandum opinion in that case found that plaintiff's exhausted claims failed as a matter of law, and his remaining claims were dismissed for failure to exhaust. (Dkt.# 100 and 101). Plaintiff appealed to the 3rd Circuit Court of Appeals and simultaneously continued to file a multitude of other motions attempting to litigate the case in the Eastern District for an additional three and a half years.

2012, *while at USP Hazelton*, he was screened for depression;[12] has been diagnosed with not only depression, but also with antisocial personality disorder;[13] and was prescribed an antidepressant, directly contradicting the claim in his Motion to Proceed Pursuant to Imminent Danger that he was not prescribed any psychotropic drugs while at Hazelton. Moreover, the dose of the antidepressant was increased at least twice to improve its efficacy.[14] Also while at Hazelton, he was provided with counseling and Chronic Care Clinic visits for his mental health problems.[15] Moreover, also during his stay at Hazelton, he admits he was hospitalized for 3 days after one of his alleged suicide attempts;[16] that he was placed on suicide watch;[17] and that the psychologist repeatedly met with him over the issue,[18] but that the psychologist found that he was merely making the suicidal gestures "out of anger at Assoc Warden ODom [sic]."[19] Clearly, the defendants have not been deliberately indifferent to the plaintiff's mental health needs.

Here, the plaintiff appears to be merely raising further permutations of the same claims he raised in a <u>Bivens</u> action recently recommended for dismissal as frivolous and for failure to state a claim[20] in this Court, in an April 2, 2014 Report and Recommendation ("R&R").[21] The

---

[12] Dkt.# 1-1 at 6.

[13] Dkt.# 1-1 at 1, 2, 4, 9, and 11.

[14] Dkt.# 1-1 at 2, 3, 4, and 8.

[15] Dkt.# 1-1 at 3 and 12.

[16] Dkt.# 1 at 3.

[17] Dkt.# 1 at 4.

[18] Dkt.# at 3, 4, and 5.

[19] Dkt.# 1 at 3.

[20] See 1:14cv16.

[21] In that case, plaintiff alleged that other prisoners had made death threats against him; he had already been assaulted; and that the defendants were ignoring his requests to be placed into protective custody or to be immediately transferred to another facility. The Warden was ordered to respond specifically to plaintiff's allegation

5

undersigned notes that a review of the record indicates that plaintiff's claims regarding being in imminent danger from his own untreated mental illness; being denied psychiatric care and the conditions of confinement in protective custody with regular clothing removed[22] have no merit, thus plaintiff's claims are frivolous as well.

For the reasons stated above, it is hereby **RECOMMENDED** that the plaintiff's Motion for Leave to Proceed *in forma pauperis* (Dkt.# 8) be **DENIED** and his Complaint (Dkt.# 1 and 7) and Amended Complaint (Dkt.# 11) be **DENIED** and **DISMISSED without prejudice as frivolous and for failure to state a claim**, pursuant to 28 U.S.C. §1915A(b)(1), and also pursuant to 28 U.S.C. §§1915(g) and Dupree v. Palmer, 284 F. 3d 1234, 1236 (11th Cir. 2002)("The proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of §1915(g). The prisoner cannot simply pay the filing fee after being denied *in forma pauperis* status. [S]he must pay the filing fee at the time [s]he initiates the suit.").

Further, the undersigned **RECOMMENDS** that the plaintiff's pending Motion to Proceed Pursuant to Imminent Danger (Dkt.# 13) also be **DENIED as frivolous and as moot.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation*,* **or by May 21, 2014,** any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver**

---

of imminent harm. The Warden's response indicated that the plaintiff had already been housed in secure custody in the SHU since December 14, 2013, six weeks before he filed the January 27, 2014 complaint; that until February 3, 2014, the plaintiff had never filed any administrative remedies regarding his alleged danger; and that a search of Hazelton's records reveals no evidence that the plaintiff had ever been assaulted.

[22] Plaintiff was apparently housed in a paper clothing or smock to prevent him from using his clothing to attempt hanging himself.

6

**of the right to appeal from a judgment of this Court based upon such recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record electronically.

DATED: May 7, 2014

/s/   James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE